IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| DR. EFFIE J. FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:18-cv-1053-JTA |
| | ) | |
| SOUTHERN UNION STATE | ) | (WO) |
| COMMUNITY COLLEGE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Dr. Effie J. Fields ("Plaintiff") filed this employment discrimination action, alleging racial discrimination and retaliation under Title VII of the Civil Rights Act, as amended (42 U.S.C. § 2000e, *et seq.*), and 42 U.S.C. § 1983.  (Doc. No. 1.)  Plaintiff filed this suit against her former employer, Southern Union State Community College, Todd Shackett, Beverly Corley, and Linda North (collectively "Defendants"), challenging her termination.

This matter is before the court on Defendants' Motion for Summary Judgment with evidentiary submissions (Doc. No. 27), Plaintiff's Response in Opposition (Doc. No. 32), and Defendants' Reply (Doc. No. 35).  Also before the court are Plaintiff's Motion to Strike Portions of Declaration of Beverly Corley (Doc. No. 28), Defendants' Response (Doc. No. 31) and Plaintiff's Reply thereto (Doc. No. 34).  Both motions are ripe for review.

After careful review, the court concludes that the motion for summary judgment is due to be GRANTED and the motion to strike is due to be DENIED.

## I.   SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one "that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  The moving party "has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case."  *McGee v. Sentinel Offender Servs., LLC,* 719 F.3d 1236, 1242 (11th Cir. 2013).

If the moving party meets its burden, the nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).  Factual assertions must cite to specific materials in the record, including affidavits, depositions, declarations, and interrogatory answers.  Fed. R. Civ. P. 56(c).  Unsupported conclusions and factual allegations are insufficient to create a genuine issue of material fact.  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).  Also insufficient are allegations based on speculation.  *Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1181 (11th Cir. 2005).  *See also Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1996) ("[U]nsubstantiated assertions alone are not enough to withstand a motion for summary

judgment.").  Finally, "the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  *Anderson*, 477 U.S. at 247–248.  In reviewing a motion for summary judgment, a court must "view the evidence in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant."  *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc*., 920 F.3d 704, 707 (11th Cir. 2019).

## II.    FACTUAL BACKGROUND[1] AND PROCEDURAL HISTORY

### A.    Plaintiff's Employment

Plaintiff, an African American female, began employment as a probationary instructor in the Language Arts Department at Southern Union State Community College ("SUSCC") on January 2, 2014.  (Doc. No. 27-1 at 3-4, 6.)  She was the first full-time African American English Instructor at SUSCC's Wadley, Alabama campus.  (Doc. No. 33-4 at ¶ 2.)  Prior to her termination, she had recently completed her Ph.D. requirements and was approved to receive a salary increase for the Fall Semester of 2016.  (Doc. No. 33-4 at ¶ 27.)

---

[1] The court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including Plaintiff's deposition excerpts and exhibits thereto (Doc. No. 27-1; Doc. No. 33-2; Doc. No. 35-1), Plaintiff's Affidavit (Doc. No. 33-4), the Declaration of Beverly Corley (Doc. No. 27-2), the Declaration of Linda North (Doc. No. 27-3), the Declaration of Sandra Hughley (Doc. No. 35-2), and the audio recordings of Plaintiff's conversations with others (Doc. No. 27-4; Doc. No. 27-5; Doc. No. 27-6; Doc. No. 27-7).  As it must when ruling on a motion for summary judgment, this court views this evidence in the light most favorable to Plaintiff and draws all justifiable inferences in her favor.  *Anderson*, 477 U.S. at 255.

Plaintiff was one of the few English professors at SUSCC who taught students how to use technology to generate citations in compliance with the formats standardized by the Modern Language Association ("MLA") and American Psychological Association ("APA").  (Doc. No. 33-4 at ¶ 5.)  One of the ways Plaintiff sought to engage her students was by allowing them to submit essays about campus cultural events or film screenings as a way of earning bonus assignments.  (Doc. No. 33-4 at ¶¶ 12-15.)

In April 2014, Plaintiff was evaluated by her immediate supervisor, Lee Ammons ("Ammons"), then-head of the Language Arts Department.  Ammons determined that Plaintiff met all expected goals with the exception of preparing syllabi according to SUSCC standards.  (Doc. No. 33-2 at 15-16, 103-07.)  Following the performance review, he trained Plaintiff in how to properly prepare a syllabus.  (*Id*. at 16.)  Ammons was succeeded as department head by Beverley Corley ("Corley") in January 2015.  (Doc. No. 27-1 at 27.)  Prior to Ammons' departure, Plaintiff received permission from Steve Spratlin ("Spratlin"), the Associate Dean of Instruction at SUSCC, to attend a diversity conference in February 2015.  (Doc. No. 33-4 at ¶ 3.)  Plaintiff attended the conference without informing Corley because she was unaware of any requirement that she inform the new department head of her travel arrangements.  (*Id*. at ¶ 4.)

Corley and Dr. Linda North ("North"), SUSCC Dean of Academics, evaluated Plaintiff's performance in March 2015.  North wrote that Plaintiff met all goals but needed improvement in the area of administrative responsibilities, had difficulty with travel forms, and did not inform the department head of her plans.  (Doc. No. 27-1 at 113-15.)  Corley's evaluation found that Plaintiff met expected goals and recommended that she follow

SUSCC syllabi requirements.  (*Id.* at 116-17.)   Corley told Plaintiff not to rely on technology to teach students the MLA citation system of source attribution.  (Doc. No. 27-2 at ¶ 4.)  North also told Plaintiff that it was normal to have difficulty with travel forms and shared that she also had trouble with the forms when she began using them.  (Doc. No. 33-2 at 29.)

Corley assigned Plaintiff the task of taking minutes at Language Arts Department meetings in May 2015.  (Doc. No. 27-1 at 55; Doc. No. 27-2 at 5, ¶ 9.)  Corley found numerous errors in the minutes in grammar, usage, and accuracy.[2]  (Doc. No. 27-2 at 5, ¶ 9.)  After performing this task for three months, Plaintiff unexpectedly learned that she was replaced by another instructor in completing the task.  (Doc. No. 27-2 at 5, ¶ 9.)

When Plaintiff was asked by Corley to administer an examination during the SUSCC's 2015 Language and Fine Arts Tournament ("LFAT"), she consulted with another instructor, Dr. Pam Horn ("Horn"), regarding the correct format for the examination answer key.  (Doc. No. 27-1 at 55.)  Instead of assisting Plaintiff, Horn volunteered to complete the task for her and she allowed Horn to do so.  (Doc. No. 33-4 at ¶¶ 8-9.)[3]

As Plaintiff gained seniority in her department, she requested that a specific course be assigned to her.  However, the Language Arts Department deviated from its past use of seniority in determining teaching assignments and denied Plaintiff her preferred

---

[2] Plaintiff regards any errors in her minutes as minor.  (Doc. No. 33-4 at ¶ 7.)

[3] Corley believes that Plaintiff asked Horn to create the answer key "because [Plaintiff] did not know the answers and had not had the material."  (Doc. No. 27-2 at 4, ¶ 6.)

assignment.   The class requested by Plaintiff was instead taught by a white adjunct instructor.  (Doc. No. 33-4 at ¶ 11.)[4]

During 2015, four students withdrew from Plaintiff's classes for various reasons. The students' written requests for withdrawal complained of (1) a student's belief that the class would not help the student grow as an individual; (2) a student's inability to schedule time to participate in opportunities for bonus credit; (3) a student's struggle with computer work in Plaintiff's class; and (4) a student's inability to afford a laptop required for Plaintiff's course.  (Doc. No. 27-2 at 26-29.)  Corley found the withdrawals concerning and took them into account during her evaluation of Plaintiff's performance.  (Doc. No. 27-2 at 4, ¶ 7.)  Plaintiff did not agree with Corley's assessment of the withdrawals as they were not based on Plaintiff's performance as an instructor, Plaintiff offered a variety of opportunities for students to earn bonus points, and she did not require a laptop for her class.  (Doc. No. 33-4 at ¶¶ 12-15.)

Plaintiff received complaints from Corley regarding her tests.  Corley told Plaintiff that out of three to four hundred questions in her test bank, she found six that were incorrect.  (Doc. No. 27-4 at 34-36; Doc. No. 33-4 at ¶ 25.)  Corley admitted that she did not check the question banks of other instructors.  (Doc. No. 33-4 at ¶ 25.)  Corley raised the issue with Plaintiff during a March 2016 meeting with Fields.  (Doc. No. 27-4 at 33.) Plaintiff emailed Corley to further discuss the examination errors but Corley told her that

---

[4] Corley did not consider Plaintiff a "team player" because she asserted seniority as grounds for rejecting a suggestion that she alternate teaching a literature course with Horn.  (Doc. No. 27-2 at 5, ¶ 10.)

they weren't important enough to warrant a meeting and would not direct her to the material she believed was incorrect.  (Doc. No. 27-4 at 35-36; Doc. No. 33-4 at ¶ 25.)

In December 2015, a meeting was convened to "discuss areas of concern [Corley] had with [Plaintiff's] ability to perform some of her duties, and to give her a chance to improve."  (Doc. No. 27-2 at 4, ¶ 11.)  Corley invited Spratlin to attend because he was the immediate supervisor for faculty and would be able to "advise [Plaintiff] or otherwise help her."  (*Id*. at 5, ¶ 11.)  During the meeting, Plaintiff told Corley of her feelings that "[Corley] treated [her] differently than [Corley] did others" because she is African American.  (Doc. No. 33-4, ¶ 21.)  Afterward, Plaintiff told Corley that she felt "racism was [Corley's] motive for her treatment of [Plaintiff]."[5]  (*Id*.)  Corley responded that Plaintiff's feelings were the result of her perception and asked if they could start over.  (*Id*.)  Plaintiff responded that she would "have to see something different to start over," and that she "never saw anything different."  (*Id*.)

Plaintiff met with Spratlin the next morning, and on his suggestion, went to tell North about her concerns of racial discrimination.  (Doc. No. 33-4, ¶ 22.)  However, Plaintiff testified that she saw "North's body tense[] up immensely" when she mentioned Corley's name, so she changed the subject and "immediately saw the tension leave North's body."  (*Id*.)  Plaintiff thus did not report any complaints of racial discrimination to North. Nonetheless, Plaintiff shared her concerns about racial discrimination several times, "to no

---

[5] Corley says that she never heard Plaintiff complain that she was a victim of racial discrimination and denies that race was a factor in her supervision of Plaintiff.  (Doc. No. 27-2 at 6, ¶ 14.)

avail," with Spratlin and Sandra Hughley ("Hughley"), the Executive Director of Human Resources at SUSCC.[6]  (*Id*. at ¶¶ 22-23; Doc. No. 35-1 at 3-4.)

Because Plaintiff was uncomfortable being evaluated solely by Corley, she asked if someone could assist in her next evaluation.  Her request was granted.  In February 2016, Corley and Brent Catchings ("Catchings") from the SUSCC Social Sciences Department conducted a joint evaluation of Plaintiff.  (Doc. No. 33-4 at ¶ 19.)  After his classroom observation, Catchings found that Plaintiff met goals in most areas but needed improvement in defining objectives for students and presenting material in a clear manner. (Doc. No. 27-1 at 143.)  Corley commented that Plaintiff made errors in departmental meeting minutes, had incorrect examination materials, missed administrative deadlines and provided incomplete feedback in grading students' work.  (Doc. No. 27-2 at 5, ¶¶ 8-9.)

Corley and Catchings relayed their assessment to Plaintiff during a meeting on March 28, 2016.  (Doc. No. 27-4.)  Also on March 28, North sent a memorandum to then-SUSCC President Glenda Colagross ("President Colagross") which recommended that Plaintiff not be reappointed.[7]  (Doc. No. 27-3 at ¶ 5; Doc. No. 27-10.)

---

[6]  Hughley denies that Plaintiff told her that she was being treated unfairly because of her race. (Doc. No. 35-2 at ¶ 3.)  Plaintiff does not provide the specific date or dates she complained of racial discrimination to Spratlin.  (Doc. No. 33-4 at ¶ 22.)  Defendants represent that they have no knowledge as to whether Spratlin recalls Fields voicing complaints of racial discrimination.  (Doc. No. 27 at 22, n.12.)

[7]  Though North's memo of March 28 did not provide a reason for Plaintiff's termination, she stated that the recommendation was based on "[Plaintiff's] incompetence and failure to follow direction."  (Doc. No. 27-3 at ¶ 5.)  North's memo noted that Plaintiff was a nonprobationary instructor.  (*Id*.)

Corley met with Plaintiff to further discuss her evaluation on April 4 and 6, 2016. (Doc. No. 27-2 at 5-6, ¶ 13; Docs. No. 27-5, 27-6.)  After the April 6 meeting with Corley, Plaintiff went to Hughley's office and discussed her wariness of her supervisor.[8]  (Doc. No. 33-4 at ¶ 4.)  Meanwhile, after Corley met with Plaintiff, she informed North that she did not think Plaintiff would make improvements.  (Doc. No. 27-2 at 6, ¶ 13; Doc. No. 27-3 at ¶ 4.)

In a letter, dated April 15, 2016, President Colagross informed Plaintiff that she was being immediately placed on administrative leave with pay through May 6, 2016, when her employment would be terminated.  (Doc. No. 27-1 at 158.)  In addition, the letter informed Plaintiff that her probationary status prevented review or appeal under the Alabama Students First Act of 2011 (Ala. Code. § 16-24C-1, *et seq*. (1975)).[9]

B.    EEOC Charge

Plaintiff filed a charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 12, 2016.  (Doc. No. 1-1.)  Her complaint alleged continuing racial discrimination while employed at SUSCC between April 15 and May 6, 2016.  (*Id*. at 1.)  By letter dated September 19, 2018, the EEOC notified Plaintiff that it was unable to conclude that SUSCC discriminated against her and that she had ninety

---

[8] Unbeknownst to Plaintiff, Hughley was aware that North had recommended Plaintiff's termination.  (Doc. No. 35-2 at ¶ 6.)

[9] The Alabama Students First Act does not require notice to a probationary employee prior to termination, nor does the terminated employee have a right to a hearing to contest the adverse action.  *See* Ala. Code § 16-24C-5(d); *Moore v. Baker*, Civ. No. 2:18-00311-KD-B, 2020 WL 4934274, at * (S.D. Ala. July 20, 2020).

days from receipt of the notice to file a federal or state lawsuit related to her claims.  (Doc. No. 1-2 at 1.)

C.    Complaint

On December 18, 2018, Plaintiff filed a three-count Complaint alleging racial discrimination and retaliation against SUSCC, its current President Todd Shackett,[10] North, and Corley.  (Doc. No. 1 at ¶¶ 6-9.)  Count One of the Complaint alleges a racial discrimination claim under Title VII against SUSCC due to Plaintiff's termination.  (*Id.* at ¶¶ 36-41.)  Count Two alleges a racial discrimination claim under "42 U.S.C. § 1981 via § 1983" against President Shackett in his official capacity, North in her official and individual capacities, and Corley in her official and individual capacities, due to Plaintiff's termination.  (*Id.* at ¶¶ 42-45.)  Count Three alleges a retaliation claim under "42 U.S.C. § 1981 via § 1983" against President Shackett in his official capacity, North in her official and individual capacities, and Corley in her official and individual capacities.  (*Id.* at ¶¶ 42-45.)  Plaintiff alleges Defendants retaliated against her for voicing her complaints of discrimination.  (*Id.* at ¶ 47.)  Plaintiff seeks compensatory damages, punitive damages, reinstatement, front pay, back pay, attorneys' fees, costs, injunctive relief, and any other relief to which she may be entitled.  (*Id.* at ¶¶ 41, 45, 48.)

D.    Motion for Summary Judgment

Defendants move for summary judgment arguing that Plaintiff's race discrimination claims fail because she was terminated due to legitimate, non-discriminatory reasons

---

[10]  President Shackett was not at SUSCC during Plaintiff's employment and is not alleged to have been personally involved in any matter related to her claims.

related to her job performance, and she is unable to show pretext. (Doc. No. 27 at 16-21.) Defendants also argue that Plaintiff's retaliation claim must fail because no decision-maker had knowledge of Plaintiff's protected expression and she cannot demonstrate retaliation was the but-for reason for her termination. (*Id*. at 22.) Defendants contend that Plaintiff's claims for monetary damages against Shackett, North and Corley in their official capacities are due to be dismissed on the basis of Eleventh Amendment immunity. (*Id*. at 23, n.13.) Defendants further contend that Plaintiff's § 1983 claims against Corley and North in their individual capacities are barred by the doctrine of qualified immunity. (*Id*. at 23-24.)

Plaintiff responds that Defendants are not entitled to summary judgment on her claims because she has raised sufficient issues of genuine fact and demonstrated that each of Defendants' given reasons for her termination are pretextual. (Doc. No. 32.) As to Eleventh Amendment immunity, Plaintiff submits that she is not seeking monetary damages against Defendants Shackett, North and Corley in their official capacities. (*Id*. at 45-46.) Rather, Plaintiff argues, she is seeking the prospective injunctive relief of reinstatement which falls within an exception to Eleventh Amendment immunity. (*Id*.) Notably, Plaintiff fails to address substantively Defendants' claims of qualified immunity.[11] (*Id*. at 45-46.)

---

[11] Plaintiff appears to confuse qualified immunity with sovereign immunity. Plaintiff has a section entitled "Qualified Immunity" in her responsive brief, but under that title she addresses Eleventh Amendment immunity. (Doc. No. 32 at 45-46.) In their reply, Defendants argue that Plaintiff "seemingly" abandoned her individual claims against Defendants Corley and North because she did not provide a substantive response to their qualified immunity defense. (Doc. No. 35 at 15.)

### III.   JURISDICTION AND VENUE

This court exercises subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.  The parties do not contest personal jurisdiction or venue, and the court finds sufficient allegations to support both in the Middle District of Alabama.

### IV.   DISCUSSION

A.   Plaintiff's Motion to Strike

As a preliminary matter, Plaintiff moves to strike portions of the Declaration of Beverly Corley (Doc. No. 27-2) which Defendants submitted in support of their motion for summary judgment.  (Doc. No. 28.)  Citing Federal Rule of Civil Procedure 56(c)(4), Plaintiff argues that portions of Corley's declaration "contain speculation not based on personal knowledge" and thus should be stricken.  (Doc. No. 28 at ¶ 5.)  Defendants respond that the motion should be treated as an objection under Rule 56(c)(2), but that in any event, the statements should stand because they are based on Corley's first-hand knowledge, are restatements of statements made by Plaintiff and are admissible as statements of a party opponent under Federal Rule of Evidence 801(d)(2).  (Doc. No. 31 at 1-2.)  Plaintiff replied in opposition.  (Doc. No. 34.)

Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  The Eleventh Circuit has interpreted Rule 56 as "allowing otherwise admissible evidence to be submitted in inadmissible form at the summary

judgment stage, though at trial it must be submitted in admissible form." *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996).  *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293-94 (11th Cir. 2012) ("[A] district court may consider a hearsay statement in passing on a motion for summary judgment if the statement can be reduced to admissible evidence at trial or reduced to admissible form.").

Considering Corley's assertion in the Declaration that it is based on her personal knowledge of the facts, that the statements at issue relate to events of which Corley was present with Plaintiff, and because Corley could testify at trial, the court declines to strike the portions of the Declaration from the record.  The statements at issue could be reduced to admissible evidence at trial, thus the court will give the statements the evidentiary weight they are due.  Accordingly, Plaintiff's motion to strike is due to be denied.

B.     Motion for Summary Judgment

Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  Section 1981 similarly prohibits intentional discrimination based on race in the employment context.  *See* 42 U.S.C. § 1981(a); *Ferrill v. Parker Grp., Inc.,* 168 F.3d 468, 472 (11th Cir. 1999).  Section 1983, which provides a private cause of action against a state actor who violates federal constitutional or statutory rights, provides the exclusive remedy for a violation of § 1981 by a state actor.[12]  *See* 42 U.S.C. § 1983.  *See Bryant v.*

---

[12] Defendants do not dispute that they are state actors.  *See Alexander v. Chattahoochee Valley Community College*, 325 F. Supp. 2d 1274, 1295 (M.D. Ala. 2004) (noting that public community

*Jones*, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009) ("[Section] 1981 does not provide [a] cause of action against state actors; therefore, § 1983 constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981.").

"Both [Title VII and § 1981] have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Hence, "the analysis of disparate treatment claims under § 1983 is identical to the analysis under Title VII where the facts on which the claims rely are the same. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Abel v. Dudderly*, 210 F.3d 1334, 1338 (11th Cir. 2000)); *see also Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985) ("Where, as here, a plaintiff predicates liability under Title VII on disparate treatment and also claims liability under sections 1981 and 1983, the legal elements of the claims are identical.").[13]

---

colleges are state actors, as are community college employees when acting in their official capacities).

[13] Generally, courts use the same legal framework to analyze employment discrimination claims under Title VII, § 1981, and § 1983, but the Supreme Court has held recently that a plaintiff in a § 1983 action for a violation of § 1981 must "initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, __ U.S. __, 140 S. Ct. 1009, 1019, 206 L.Ed.2d 356 (2020). Plaintiff has not carried her burden in this case. Plaintiff has not shown sufficient evidence to prove that race was a but-for cause of her injury.

1.   <u>Framework and Analysis for Title VII Disparate Treatment and §
1983 Racial Discrimination Claims</u>

"In order to survive summary judgment, a plaintiff alleging intentional
discrimination must present sufficient facts to permit a jury to rule in her favor." *Lewis v.
City of Union City, Georgia*, 918 F.3d 1213, 1220-21 (11th Cir. 2019).  Courts assess
circumstantial evidence[14] of discrimination through the three-part burden-shifting
framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[15]  *Burke-
Fowler v. Orange Cty.*, 447 F.3d 1319, 1323 (11th Cir. 2006).  Under that framework,  "the
plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by
showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse
employment action, (3) that she was qualified to perform the job in question, and (4) that
her employer treated 'similarly situated' employees outside her class more favorably."
*Lewis*, 918 F.3d at 1220-21.  When a plaintiff makes her *prima facie* case of discrimination,
a presumption of unlawful discrimination is created, but "the employer can rebut that
presumption by articulating one or more legitimate non-discriminatory reasons for its
action."  *Alvarez v. Royal Atl. Developers, Inc*., 610 F.3d 1253, 1264 (11th Cir. 2010).  If
the defendant proffers a non-retaliatory reason, the burden returns to the plaintiff, who must
show that the proffered reason is pretextual.  *Id.*

---

[14] Plaintiff's Complaint gave notice of her intent to rely upon circumstantial evidence of intentional
discrimination by Defendants in violation of Title VII (Count One) and § 1983 (Count Two).  (Doc.
No. 1 at ¶¶ 37, 43.)  In addition, Plaintiff offers no direct evidence of discrimination to support her
claims.

[15] "Because *McDonnell Douglas* arose in a context where but-for causation was the undisputed
test, it did not address causation standards."  *Comcast Corp.*, 140 S. Ct. 1009, 1019, 206 L. Ed. 2d
356 (2020).

"A reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, and that discrimination was the real reason.' " *Brooks v. Cnty. Comm. of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).   The plaintiff can demonstrate pretext by exposing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the defendant's reasoning.  *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007).   The plaintiff may not "recast an employer's proffered non-discriminatory reasons or substitute h[er] business judgment for that of the employer. Provided that the proffered reason[s] . . .  might motivate a reasonable employer, [a plaintiff] must meet [those] reason[s] head on and rebut [them], and the [plaintiff] cannot succeed by simply quarreling with the wisdom of [those] reason[s].  *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).  "A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race."  *Brooks*, 446 F.3d at 1163 (quoting *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1339 (11th Cir. 2000)).   In reviewing an employer's stated reasons for an employment action, a court cannot re-examine or substitute its judgment for the employer's business decisions.  *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).

For purposes of this motion, Defendants concede that Plaintiff has established a *prima facie* case for discrimination under *McDonnell Douglas* based upon (1) her membership in a protected class; (2) qualifications for the position she held; (3) termination from that position; and (4) replacement in that position by a person outside the protected

class.  (Doc. No. 27 at 15-16.)  Given their concession, the court turns to consider the next step in the *McDonnell Douglas* framework.

After establishing a *prima facie* case, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for their decision to terminate Plaintiff's employment.  Defendants proffer evidence of several non-discriminatory reasons for Plaintiff's termination, including Plaintiff's failure to follow instructions, unpreparedness for class-related tasks and other academic projects, errors in departmental minutes, difficulty in interactions with co-workers and responses to criticism, incorrect examination materials, and inadequate grading feedback to students.  Because these reasons articulate, legitimate, non-discriminatory reasons for Defendants' decision, the burden shifts to Plaintiff to establish these reasons were pretextual.  *See Brooks*, 446 F.3d at 1162.

Plaintiff must meet Defendants' non-discriminatory grounds for termination with "evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons but were a pretext for discrimination." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005). In this effort Plaintiff can either directly persuade the court that a discriminatory reason more likely motivated the employer or indirectly show that the employer's proffered explanation is unworthy of credence. *Kragor v. Takeda Pharmaceuticals Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).  "Pretext means a lie, specifically a phony reason for some action." *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1261 (11th Cir. 2001); *see also Williams v. Ala. Indus. Dev't Training*, 146 F. Supp. 2d 1214, 1224 (M.D. Ala. 2001).  Absent a lie

17

establishing pretext, the Eleventh Circuit has "repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law. [Courts] are not in the business of adjudging whether employment decisions are prudent or fair. Instead, [a court's] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Further, "[a] reason is not pretext for discrimination unless it is shown <u>both</u> that the reason was false, <u>and</u> that discrimination was the real reason." *Brooks*, 446 F.3d at 1163 (internal quotations and citation omitted).

Here, Plaintiff asserts each reason Defendants submit for terminating her are pretext for race discrimination. Plaintiff argues that she was inadequately trained by SUSCC on syllabi preparation and travel forms, she was justified in instructing students to rely on technology when creating MLA citations, any error in her departmental minutes were minor, and that Corley is mistaken on the relevant facts concerning her preparation of the exam key for the 2015 Language and Fine Arts Tournament. Additionally, Plaintiff argues that her race was the true reason for Corley's class-assignment practices, consideration of student withdrawals as a negative factor in evaluations, and decision to review her examinations.

The problem for Plaintiff is that she does not present evidence sufficient to establish that the proffered reasons are pretext for discrimination. Though Plaintiff has presented her perspective on the circumstances underlying Defendants' reasons for her termination, and the court is required to view the facts of this case in the light most favorable to her, she has not "refuted [Defendants' reasons] as factually incorrect." *Gadling-Cole v. Lagory*,

18

677 F. App'x 602, 607 (11th Cir. 2017).  In *Gadling-Cole*, the Eleventh Circuit stated that

"[g]iving weight . . . to Plaintiff's excuses or reasons for disagreement would be engaging

in the sort of second-guessing of business decisions that is beyond our province in Title

VII cases."  *Id*., 677 F. App'x at 607.  In other words, Plaintiff may not simply "litigate

whether [she was], in fact [a] good employee[ ]."  *Alvarez*, 610 F.3d at 1266 (citation

omitted).  "The inquiry into pretext centers on the employer's beliefs, not the employee's

beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's

head." *Id*. at 1266 (citation omitted).

Plaintiff's burden for purposes of demonstrating pretext is to show that

Defendants' reasons for termination were false, <u>and</u> that discrimination was the true reason

for their adverse employment decision.  *Brooks,* 446 F.3d at 1163.  Here, Plaintiff's

rebuttals constitute a mere recasting of SUSCC's proffered reasons, which do not rebut the

non-discriminatory reasons provided by Defendants. *Chapman*, 229 F.3d at 1030; *Burns*

*v. City of Cape Coral*, 520 F. App'x 913, 914-15 (11th Cir. 2013).  This court's inquiry is

limited to "whether the employer gave an honest explanation of its behavior." *Chapman,*

*id*. (quoting *Elrod*, 939 F.2d at 1470).  In making this determination, the court has carefully

reviewed the affidavits, exhibits and transcripts submitted by both parties and can find no

material falsity in SUSCC's proffered grounds for legitimately terminating Plaintiff.

Rather, the documentation provided by Defendants supports their decision to discontinue

Plaintiff's employment for reasons that would motivate college administrators who want

instructors to follow institutional guidelines. *Chapman*, *id*.  Further, Plaintiff fails to point

the court to evidence that the employment decision was motivated by discriminatory intent

and thus she has not presented evidence sufficient to raise a genuine issue of material fact as to pretext.  Because Plaintiff has not established sufficient evidence of pretext when evaluated against Defendants' non-discriminatory reasons for termination, she fails to meet her burden under the *McDonnell Douglas* framework.

Notwithstanding the *McDonnell Douglas* framework, Plaintiff can still overcome a motion for summary judgment by presenting a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (internal quotations and citation omitted).  "A convincing mosaic may be shown by evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements ..., and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual."  *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019) (internal quotations and citation omitted).

Here, Plaintiff does not present sufficient circumstantial evidence of suspicious timing, ambiguity, systemically better or worse treatment of similarly situated employees, or pretext to present a convincing mosaic upon which intentional discrimination can be inferred.  Plaintiff's circumstantial evidence that she was inadequately trained in travel forms, departmental minutes, and preparing an exam key for the 2015 Language and Fine Arts Tournament; justified in instructing students to rely on technology; and misunderstood in relation to student withdrawals and reviews of her examinations, fall short of showing that Defendants impermissibly relied on her race when making their decision to terminate

her.  Plaintiff fails to present sufficient evidence to refute Defendants' reasons for her termination or to demonstrate that their reasons were false and that the real reason was discrimination.  Plaintiff posits that she told Corley she "felt racism was [Corley's] motive for her treatment of [Plaintiff]."  (Doc. No. 33-4 at ¶ 21.)  However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment."  *Rollins*, 833 F.2d at 1529.  *See, e.g., Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) (conclusory allegations without specific supporting facts have no probative value).  Even when viewed in the light most favorable to Plaintiff, her factual showing does not create a triable claim of race discrimination. Accordingly, Defendants' motion for summary judgment is due to be granted on Plaintiff's Title VII and § 1983 race discrimination claims.

### 2.    Framework and Analysis for § 1983 Retaliation Claim

Section 1981 prohibits racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(a), (b).  Though there is no mention of retaliation in the text of § 1981, the Supreme Court has held that § 1981 "encompasses claims of retaliation."  *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008).  *See also Gogel v. Kia Motors Mfg. of Georgia, Inc*., 967 F.3d 1121, 1134 (11th Cir. 2020) ("Retaliation claims are also cognizable under 42 U.S.C. § 1981.").

In absence of direct evidence, retaliation claims are analyzed under the same burden-shifting framework as discrimination claims, which means that the plaintiff must first establish a *prima facie* case.  *See Olmsted v. Taco Bell Corp*., 141 F.3d 1457, 1460

(11th Cir. 1998).  A *prima facie* case of retaliation requires a plaintiff to show that she (1) engaged in a statutorily protected activity; (2) suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action.  *Bryant*, 575 F.3d at 1307-08; *Goldsmith v. Bagby Elevator Co*., 513 F.3d 1261, 1277 (11th Cir. 2008).  "These three elements create a presumption that the adverse action was the product of an intent to retaliate."  *Bryant, id*. at 1308.  If a plaintiff establishes a *prima facie* case of retaliation, the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate, non-retaliatory reason for the adverse employment action.  *Id*. at 1308.  After the defendant makes this showing, the plaintiff has a full and fair opportunity to demonstrate that the defendant's proffered reason was merely a pretext.  *Id*.  "Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff."  *Equal Employment Opportunity Comm'n v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002).

Plaintiff asserts that her statutorily protected activities were (1) repeatedly informing Corley, Spratlin and Hughley through verbal complaints that she believed her race was negatively impacting her employment at SUSCC, and (2) giving notice to Hughley on April 6, 2016 that she was preparing to file a formal grievance due to perceived harassment by Corley.  (Doc. No. 32 at 40-41.)

First, Plaintiff's April 6, 2016 discussion with Hughley cannot be protected activity because it contains no mention of racial discrimination, racial harassment or any other violation of § 1981.  Protected activity includes the assertion of rights encompassed by §

1981—here the right to remain free from discrimination based on race.  *See Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 961 (11th Cir. 1997) ("It is well established that § 1981 is concerned with racial discrimination in the making and enforcement of contracts."); *Jones v. Horizon Shipbuilding, Inc.*, No. 11–0012–WS–M, 2012 WL 5187800, at *11 n. 31 (S.D. Ala. Oct. 19, 2012) ("Section 1981 ... forbids only race discrimination.").  Complaining about racial discrimination in the workplace is protected activity whether it is made formally or informally.  *Rollins v. State of Fla. Dep't of Law Enf't*, 868 F.2d 397, 400 (11th Cir. 1989).  An employee is shielded "from retaliation regardless of the merit of her complaints so long as she can show a good faith, reasonable belief" that the alleged discrimination violates § 1981.  *Id*. (citation omitted).  Hence, no matter how the complaint is made, in order to be protected activity under § 1981, it must communicate a belief that an employer is engaged in racial discrimination.

While Plaintiff complained to Hughley of Corley's harassing behavior, there is no evidence in the record that during this meeting Plaintiff accused Corley of racial harassment.  In the recorded meeting, Plaintiff complained that she was "feeling harassed by [her] supervisor" and she saw "a pattern of harassment" in regard to her evaluations. (Doc. No. 27-7 at 4, 5, 14.)  Plaintiff in no way communicated that she was being subjected to racial harassment or racial discrimination.  Because Plaintiff did not assert her belief to Hughley that the conflict between her and Corley was race-related, her complaints to Hughley were not protected activity.  *See Jeronimus v. Polk County Opportunity Council, Inc.*, 145 F. App'x 319, 326 (11th Cir. 2005) (a complaint "of being 'singled out,' being subjected to 'a campaign of harassment,' and working in a 'hostile environment' ... did not

amount to protected conduct" where it "never suggested that this treatment was in any way related to [the plaintiff's] race . . . .").

Second, considering the evidence in the light most favorable to Plaintiff, the court finds no causal link between the verbal complaints she brought to Corley, Hughley and Spratlin and her termination.  Courts must look for the "but-for" element when assessing causation under § 1981, *i.e.*, a plaintiff making a retaliation claim must establish that the protected activity was a "but-for" cause of the adverse action by the employer.  *Comcast Corp.*,  140 S. Ct. at 1014-16 (reviewing history of § 1981 to conclude that is provides "a federal remedy against discrimination . . . *on the basis of* race," and that the choice of language is "strongly suggestive of a but-for causation standard").  Viewing the evidence in the light most favorable to Plaintiff,[16] she complained of disparate treatment based on her race to Spratlin and Corley in December 2015.[17]  (Doc. No. 33-10 at 1, 2.)  Four months later, in April 2016, Plaintiff was informed that her employment with SUSCC was discontinued, and she was placed on administrative leave.  (Doc. No. 27-1 at 158.)  The passage of four months between Plaintiff's protected activity - raising race as an

---

[16] The court notes that even though Corley and Hughley deny that Plaintiff told them that she believed her workplace difficulties were race-based, Plaintiff's version of events controls the court's analysis at the summary judgment stage.  (Doc. No. 33-4 at ¶¶ 21-22.)

[17] The specific dates for when Plaintiff complained verbally to Corley, Hughley and Spratlin of racial discrimination are not established in the record.  The evidence before the court indicates that the discussion with Corley occurred in December 2015.  (Doc. No. 33-4 at ¶ 21; Doc. No. 38-10.)  Likewise, the evidence indicates Plaintiff's discussion with Spratlin occurred in December 2015.  (Doc. No. 33-4 at ¶¶ 21-22.)  However, the date, prior to April 6, 2016, that Plaintiff complained of racial discrimination to Hughley is not established.  (*See* Doc. No. 33-4 at ¶ 23) ("Prior to meeting with Mrs. Hughley on April 6, I had met with her *several times before*.  I did indeed state that there were racial motives behind my treatment.") (emphasis added).  Plaintiff has not shown a causal link between her pre-April 2016 complaints to Hughley and her termination.

employment issue with Corley and Spratlin - and the resulting adverse employment action has been deemed too remote by the Eleventh Circuit to establish a causal link. *See Jones v. Dept. of Corr.*, 792 F. App'x 694, 697 (11th Cir. 2019) (finding three-month period between complaint and termination too short to establish a prima facie case of retaliation); *Wascura v. City of South Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) (three and one-half months temporal proximity, without more, is insufficient to create jury issue). In light of the aforementioned precedent, the court finds that the four-month lapse between Plaintiff's protected activity and her termination fails to raise an inference of a causal link and thus prevents her from establishing a *prima facie* case of retaliation.

Third, there is nothing in the record to suggest that President Colagross knew Plaintiff had complained of race discrimination. "Generally, a plaintiff can show the [protected conduct is] not wholly unrelated [from the adverse action] if the plaintiff shows that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010). Plaintiff has presented no evidence showing that President Colagross knew or was informed of Plaintiff's complaints of race discrimination to Corley, Hughley and Spratlin. Accordingly, a causal link for Plaintiff's *prima facie* case of retaliation has not been established.[18]

---

[18] Plaintiff argues that a causal link between her protected activity and her termination is established under the "cat's paw" theory. (Doc. No. 32 at 42.) "[D]iscriminatory animus may be imputed to a neutral decisionmaker under a 'cat's paw' theory if (1) a supervisor performed an act motivated by animus that was intended to cause an adverse employment action, and (2) the act was a proximate cause of the adverse employment action." *Rudy v. Walter Coke, Inc*., 613 F. App'x 828, 830 (11th Cir. 2015) (quoting *Staub v. Proctor Hosp*., 562 U.S. 411, 422, 131 S. Ct. 1186, 1194,

Even assuming Plaintiff could establish a *prima facie* case for § 1981 retaliation, the burden would shift to Defendants to articulate a legitimate, non-retaliatory reason for the adverse employment action under the *McDonnell Douglas* framework.   The same reasons advanced by Defendants in defense to Plaintiff's race discrimination claims—her failure to meet workplace expectations, her failure to follow instructions and her difficulties in receiving criticism—satisfy their burden of production.   Although Plaintiff disagrees with each reason proffered by Defendants for her termination, for the same reasons discussed above, the court finds she has not introduced substantial evidence to rebut them. "A reason is not pretext for discrimination unless it is shown <u>both</u> that the reason was false, <u>and</u> that discrimination was the real reason. " *Brooks,* 446 F.3d at 1163 (internal quotations and citation omitted).   Here, Plaintiff has merely offered argument that there are factual disputes regarding the truly motivating factor behind the decision to terminate her.   (Doc. No. 32 at 44.)   This simply is not enough.   *See Siudock v. Volusia Cty. Sch. Bd*., 568 F. App'x 659, 664 (11th Cir. 2014) ("Siudock presents no evidence, other than his own unsupported belief, that these reasons were pretextual. Thus, the district court properly granted summary judgment on his retaliation claims.").   As the court has explained, the

---

179 L. Ed. 2d 144 (2011)).   "A plaintiff may establish causation under this theory if the decisionmaker either followed another supervisor's biased recommendation without independently investigating the complaint against the plaintiff or conducted an independent investigation but relied on facts provided by the biased supervisor."   *Id*. at 830-831.   The court is not persuaded by Plaintiff's argument as the decision maker was President Colagross and North (not Corley) recommended Plaintiff's dismissal to President Colagross.   There is no evidence in the record which establishes that North was a biased supervisor.   Adopting Plaintiff's argument would require this court to find that Corley, the allegedly biased supervisor, influenced North who in turn influenced President Colagross.   The court is not inclined to make that leap.   Nonetheless, the court continues its discussion by assuming *arguendo* Plaintiff could establish a *prima facie* case and therefore addresses pretext.

ultimate burden of persuasion remains at all times with the plaintiff. *Joe's Stone Crabs, Inc.*, 296 F.3d at 1273. Accordingly, Defendants are entitled to summary judgment on Plaintiff's § 1981 retaliation claim.

3. <u>Immunity</u>

In addition to defending Plaintiff's § 1983 claims on the merits, Defendants assert that North and Corley enjoy the protection of qualified immunity in their individual capacities. Defendants also assert that the claims against Shackett, North and Corley in their official capacities are subject to dismissal due to Eleventh Amendment immunity. Because the court finds that Defendants did not violate Plaintiff's statutory rights under § 1981, it pretermits discussion of Defendants' various claims of immunity.

**V.    <u>CONCLUSION</u>**

For the foregoing reasons, it is hereby ORDERED as follows:

1.    Plaintiff's Motion to Strike Portions of Declaration of Beverly Corley (Doc. No. 28) is DENIED.

2.    Defendants' Motion for Summary Judgment (Doc. No. 27) is GRANTED.

3.    Costs are taxed against Plaintiff for which execution may issue.

A separate final judgment will be entered.

DONE this 9th day of February, 2022.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE